UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEVE BARYLICK,<br>             Plaintiff<br><br>v.<br><br>MASSACHUSETTS BAY<br>TRANSPORTATION AUTHORITY,<br>BARBARA MOULTON, and<br>ROSE YATES,<br>             Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A.# 04-10618-RCL

## MEMORANDUM OF LAW IN SUPPORT MOTION OF THE DEFENDANTS FOR SUMMARY JUDGMENT AND/OR FOR A GRANT OF QUALIFIED IMMUNITY
(pursuant to Local Rule 56.1)

## INTRODUCTION

The Defendants, Massachusetts Bay Transportation Authority (hereinafter "MBTA"), Barbara Moulton, and Rose Yates, submit that there are no issues of material fact in dispute in this case and that they are entitled to judgment as a matter of law.

The Defendants have filed a STATEMENT OF FACTS (hereinafter "SOF") contemporaneous with this memorandum.

Briefly stated, the Plaintiff was hired as the Manager of Creative Services in the MBTA's Marketing Department on June 30, 2003. Ms. Moulton is the Director of that Department. Ms. Yates is the Deputy Director of that Department and she was the Plaintiff's immediate supervisor. Ms. Yates also was one of a three-member panel that interviewed him for the position. She, along with the other two members, chose him as the highest scoring applicant based upon his oral responses and representations during that interview. Subsequently, he admitted that his representations were not truthful.

The crux of this case is that, unfortunately, the Plaintiff did not meet the expectations of his employer and he was discharged on September 10, 2003 -- approximately ten (10) weeks after his hire and prior to the end of his probationary period. The Plaintiff was offered the opportunity to resign, but he chose not to do so.

As demonstrated in the SOF, throughout the Plaintiff's brief tenure, the conduct of the Defendants was professional and exemplary. Until the Plaintiff admitted misrepresenting his qualifications for the job, they did not discipline him for his egregious managerial gaffes. Rather, Ms. Yates attempted to mentor him and lessened his duties in order that he might succeed in his management role. However, his job performance did not improve. On August 26, 2003, the Plaintiff was informed that he had two weeks to significantly improve his performance in three areas, including communications. He was also informed ·in writing· that at the end of the two-week period, his future at the MBTA would be addressed. Notwithstanding this warning, he committed a serious communications gaffe on September 4, 2003. Ultimately, on Friday, September 5, 2003, at a meeting with Ms. Yates and Ms. Moulton, the Plaintiff admitted that he had no prior experience in creating and working with a creative brief. The Defendants (and, presumably, all marketing professionals) view the use of a creative brief as an essential tool for a manager to use to convey the creative tasks and strategy to his or her team. The use of a creative brief is a critical and core area in the Plaintiff's job. He had specifically and repeatedly misrepresented at his initial interview and at his various subsequent meetings with Ms. Yates that he had such experience.

At that meeting on September 5, 2003, the Plaintiff was informed that, in light of his having misrepresented his experience, his employment situation would be addressed after consultation with the MBTA's Office of Human Resources and Office of Labor Relations. Subsequently, on Tuesday, September 9, 2003, he was informed to attend a meeting in regard to his job performance. That meeting took place on Wednesday, September 10, 2003. He attended with union and/or legal representation. (The union representative is also an attorney.) In any event, at the meeting, the Plaintiff was informed in writing of the specific and serious concerns that the Defendants had regarding his conduct and his capacity to manage. He denied the charges, but he did not rebut them. He was offered the opportunity to resign in lieu of discharge. After consultation with his representative, he refused the offer. At that point, and pursuant to standard MBTA policy, he was given a thirty(30)-day suspension with a recommendation for discharge. Also pursuant to standard MBTA policy, his discharge was effective as of September 10, 2003.

As further argued, the Defendants did nothing that warrants any of the allegations levied against them. Indeed, they attempted to mentor and assist the Plaintiff until he conceded that he lacked the requisite knowledge and experience to do the job.

## BACKGROUND

The Plaintiff filed an eight-count Complaint. The specific counts are:

The Counts against the MBTA allege:

COUNT I: Violation of M.G.L. c.151B;

COUNT II: Retaliation in violation of M.G.L. c.149, §185;

COUNT III: Violation of the Massachusetts Civil Rights Act, M.G.L. c.12, §11 I;

COUNT IV: Wrongful termination in violation of the common law of Massachusetts;

The Counts against Ms. Moulton allege:

COUNT V: Violation of the Massachusetts Civil Rights Act, M.G.L. c.12, §11 I;

COUNT VII: Intentional infliction of emotional distress in violation of the common law of Massachusetts;

The Counts against Ms. Yates allege:

COUNT VI: Violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, §11 I;

COUNT VIII: Intentional infliction of emotional distress in violation of the common law of Massachusetts;

## THE LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Barbour v. Dynamics Research Corp, 63 F.3d 32, 36 (1st Cir. 1995) (quoting Fed.R.Civ.P. 56(c)). To prevail on summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L. Ed.2d 265 (1986). Once the moving party satisfies this requirement, the burden shifts to the non-moving party to establish the existence of at least one factual issue that is both genuine and material. See, LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To successfully oppose summary judgment, the non-moving party "may not rest upon mere allegations or denials of his pleading," but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc, 6 F.3d at 841 (quoting Anderson, 477 U.S. at 256). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. See, Rogers, 902 F.2d at 143 (quoting Anderson, 477 U.S. at 249-250) (citations omitted). The Court must "view the facts in the light most favorable to the

non-moving party, drawing all reasonable inferences in that party's favor." <u>Barbour</u>, 63 F.3d at 36.

In this case it is important to note that "[E]ven in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Benoit v. Technical Manufacturing Corp.*, 331 F.3d 166, 173 (1st Cir. 2003) (internal quotations omitted).

<u>ARGUMENT</u>

I.    COUNT I MUST BE DISMISSED BECAUSE THE PLAINTIFF FAILS TO STATE A PRIMA FACIE CASE OF AGE DISCRIMINATION AND BECAUSE HE WAS DISCHARGED FOR LEGITIMATE BUSINESS REASONS.

<u>LEGAL ANALYSIS</u>

Pursuant to M.G.L. c.151B, §4(1B) an employer may not discriminate against an employee who is over forty (40) years of age in "compensation or in terms, conditions or privileges of employment...." To address employment discrimination claims Massachusetts courts have adopted the familiar three-pronged analysis originally devised for Title VII cases by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). *See*, <u>Wynn & Wynn, P.C. v. MCAD</u>, 431 Mass. 655, 665 (2000). In the first prong the Plaintiff must prove a prima facie case of discrimination. <u>Knight v. Avon Products, Inc.</u>, 438 Mass. 413, 420 & n.4 (2003). Traditionally these elements are:(1) that the Plaintiff is a member of the protected class (i.e., over forty (40) years of age); (2) that he performed his job satisfactorily; (3) that he was terminated; and (4) that the employer replaced him with a significantly younger person (i.e., more than five (5) years age difference). *Id.* at 424. Of course, the elements may vary to fit the situation. *Id.* at 421.

"A Plaintiff who cannot establish a prima facie case (and who otherwise lacks evidence of discrimination), however, cannot survive the first stage of his claim." *Id.* at 422 [parentheticals in the original]. In this case, the Plaintiff cannot establish a prima facie case. Therefore, summary judgment is appropriate.

If a Plaintiff puts forth sufficient evidence to satisfy his prima facie burden, the second prong requires that the employer articulate legitimate, non-discriminatory reasons for the adverse employment action. If the employer articulates legitimate, non-discriminatory reasons for the adverse employment action, the third prong requires the Plaintiff to prove that *age discrimination was the determinant cause of the adverse employment action. See*, <u>Lipchitz v. Raytheon Co.</u>, 434 Mass. 493, 504 (2001). *See also*, <u>Knight</u>, 438 Mass. at 426 ("The central question is whether the plaintiff has established a logical basis for a jury to find

that the employer would not have taken the same action had the employee been of a younger age."). In this regard, this Honorable Court should take note of Massachusetts Appeals Court Justice Kass' observation, "…it is improbable that the same persons who hire or promote someone already in an older age bracket will suddenly develop an aversion to older people." Dziamba v. Warner & Stackpole LLP, 56 Mass. App. Ct. 397, 406 (2002).

### THE PLAINTIFF FAILS TO STATE A PRIMA FACIE CASE OF AGE DISCRIMINATION

The Plaintiff fails to state a prima facie case of age discrimination. His Complaint states neither his age, nor the ages of the individual Respondents. His allegations either are too vague or evanescent to respond to or are just plain wrong. For instance, he alleges in paragraphs 9 and 11 of his Complaint that during his employment at the MBTA he "received disparate treatment by Moulton and Yates" because of his age. Yet, he does not offer any comparator. Without a comparator, his allegation of disparate treatment is an empty phrase, and it is an utterly empty exercise to attempt to respond to it.

To establish a prima facie case of age discrimination, the Plaintiff has the burden of demonstrating that he did his work at an acceptable level. Knight, 438 Mass. at 420 & n.4.  In the instant case, he cannot claim that deliberately excluding one member of his six-person staff from a staff meeting to "teach her a lesson" was acceptable to his employer. This is especially so when that staff member is the only African-American woman on his staff. His decision in that instance at least *suggested* racial overtones and manifestly exhibited disgracefully poor management judgment. Moreover, after Ms. Yates spoke to the Plaintiff about the egregious nature of his behavior, he sent a terse and very unprofessional e-mail to this very same African-American staffer blaming her for his lack of information on a vital project. Again, his decision-making at least *suggested* racial overtones and his conduct continued to exhibit disgracefully poor management judgment. Of course, the apogee of the Defendants' frustrations with the Plaintiff's job performance was when, ten (10) weeks into the job, he admitted that he misrepresented his work experience vis-à-vis the creative brief. At that point, the Defendants reasonably concluded not only that he was not performing at an acceptable level, but also that he was incapable of performing the job at the level they had expected.

The Plaintiff alleges that he performed his job at an acceptable level (Complaint, par. 11). However, the Defendants, through the SOF, have demonstrated beyond the pale that he misrepresented his work experience, committed managerial gaffes, and failed to get the job done. Certainly, the Plaintiff cannot show that he performed his job in a manner that satisfied his employer's legitimate expectations. He cannot ignore his own actions. He cannot demonstrate that the MBTA disciplined him for any reason other than his blatant misconduct and failure to perform at an acceptable level. Therefore, he fails on the second

5

element of the prima facie criteria and he cannot make out a prima facie case of age discrimination. *See genl.*, Ryan v. Raytheon Data Sys. Co., 601 F. Supp. 243, 247 (D. Mass. 1984). His failure to demonstrate an acceptable level of work performance is fatal to his claims and for this reason alone the Defendants are entitled to summary judgment.

The Plaintiff also alleges that after he was discharged his position was taken by a "man approximately 35 years old" (Complaint, par. 14). This is not true. His job duties were taken over by Ms. Yates. The Defendants have subsequently neither advertised for, nor hired, a Manager of Creative Services.

The Plaintiff has failed to demonstrate the existence of a prima facie case and summary judgment is appropriate for Count I.

## THE PLAINTIFF WAS DISCHARGED FOR LEGITIMATE BUSINESS REASONS

The Plaintiff admitted to misrepresenting his job experience with a creative brief, a core element of his job, when he applied for the position. As a probationary employee, the Plaintiff was evaluated for his conduct as a manager and for his capacity to get his job done. As to both aspects, his job performance was unacceptable to his employer. It is not acceptable for a manager to deliberately isolate and embarrass an employee, and it is particularly egregious when the employee is the only African-American woman in the unit. It is not acceptable to send accusatory and haranguing e-mails to employees. It is not acceptable to misrepresent your experience in any aspect, much less a critical aspect, of your job. Moreover, the Plaintiff's supervisors met with frustration when trying to get him to simply do his job. After ten (10) weeks, it was apparent that he was not only not performing his job in an acceptable manner, but also not likely to improve. His discharge was strictly for sound business reasons. *See genl.*, Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992) ("Courts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions.")

As an aside, the Defendants urge that this Honorable Court accept the employer's reasonable view of the facts concerning the Plaintiff's job performance. The courts must do so in First Amendment analysis where the Plaintiff is a government employee and the courts weigh that employee's interest in speaking on matters of public concern against the government employer's interest in an efficient workplace. In *Waters v. Churchill*, 511 U.S. 661 (1994) (plurality), the Court elaborated on its concern that the lower courts were not giving sufficient deference to the government's interest as an employer when utilizing the familiar balancing test utilized in *Connick v. Myers*, 461 U.S. 138 (1983). The Court stated that the "key to First Amendment analysis of government employment decisions, then, is this: The government's interest in achieving its goals as effectively as possible is

elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer...where the government is employing someone for the very purpose of effectively achieving its goals, such restrictions [on First Amendment speech] may well be appropriate". *Id.* at 675. To account for the public employer's interest, the First Amendment analysis requires a court to "look to the facts as the employer reasonably found them to be". *Id.* at 677(emphasis in original). *See*, Meaney v. Dever, 326 F.3d 283, 288 (1st Cir. 2003) (the First Circuit explained that the Waters principle that courts must defer to the employer's view of whether a governmental employee's speech was a matter of public concern was agreed upon by a majority of the Supreme Court and, thus, has the force of law.)

In the instant case, age was not a factor in the decision to discharge the Plaintiff. Rather, the Defendants invested a substantial amount of time and effort to hire him with the expectation that he would effectively manage the Creative Services Unit. After being given every opportunity to succeed, he failed. It is incongruous to conclude that the Defendants, after hiring the Plaintiff, would, ten (10) weeks later, discharge him because of his age. It is worth repeating the mindful words of Justice Kass, "...it is improbable that the same persons who hire or promote someone already in an older age bracket will suddenly develop an aversion to older people." Dziamba, 56 Mass. App. Ct. at 406.

Certainly the Plaintiff cannot prove that age was a factor, let alone the motivating factor, for his discharge. There was no discrimination in this case and summary judgment is warranted for Count I.

II.    COUNT II, ALLEGING RETALIATION IN VIOLATION OF M.G.L. c.149, §185, MUST BE DISMISSED.

The Plaintiff provides the scantest of information when he alleges, vaguely, that the MBTA "unlawfully retaliated against [him] for refusing to participate in an activity that Barylick believed to be against the law...." (Complaint, par. 20). This Honorable Court does not have to limn what the Plaintiff means by this bald allegation because the Plaintiff did not give written notice to the MBTA and, therefore, he is precluded from bringing this claim.

The statute under which the Plaintiff brings this claim, M.G.L. c.149, §185 (b)(3), requires that he notify his employer in writing of the alleged unlawful conduct prior to initiating suit in order to put the employer on notice and to afford the employer to opportunity to rectify the situation. In Dirrane v. Brookline Police Dept., 315 F.3d 65, 73 (1st Cir. 2002), the First Circuit observed that:

> ...the town argues that the state court in which Dirrane filed his lawsuit was a public body and thus he was required to give written notice before filing suit. Under the literal language of the statute, the town is correct; the statute

7

defines "public bodies" to include "any federal, state, or local judiciary."  Mass. Gen. Laws ch. 149, § 185(a)(3). In this application, a literal reading does make sense: the written notice requirement gives the employer one last chance to correct wrongdoing before the employee goes public with his accusations.

Of course, on Dirrane's version of events, his oral complaints were repeated and comprehensive and a written notice would likely have produced no different result. Nor is there any indication that written notice prior to suit would have resulted in the department undoing the transfer. *But the statute is unqualified in its requirement and in this instance a hard and fast rule does serve a rational purpose, namely, by avoiding uncertainties about what might have happened if formal notice had been given. Thus, we agree that the state whistleblower claim is barred.* (emphasis added) *accord,* <u>Bennett v. City of Holyoke</u>, 362 F.3d 1, 6 (1st Cir.2004).

In the present case, the Plaintiff did not provide any notification, verbal or written, to the MBTA regarding alleged unlawful conduct. His failure to provide written notice to the MBTA requires that Count II must be dismissed.

III.    COUNT III, ALLEGING VIOLATIONS UNDER THE MCRA, MUST BE DISMISSED BECAUSE THE MBTA IS NOT A "PERSON" SUBJECT TO SUIT UNDER M.G.L. c.12, § 11 I.

The MBTA is not a "person" subject to suit under M.G. L. c.12, §11 I. *See,* <u>Howcroft v. City of Peabody</u>, 51 Mass. App. Ct. 573, 591-92 (2001). Moreover, the MBTA cannot be vicariously liable for the actions of its employees under that statute. *See,* <u>Chaarbouni v. City of Boston</u>, 133 F. Supp.2d 93, 103 (D. Mass. 2001); <u>Raymond v. City of Worcester</u>, 142 F. Supp.2d 145, 149 (D. Mass 2001). It does not matter that the MBTA is not a municipality, as the defendants were in the <u>Howcroft</u> and <u>Chaarbouni</u> cases.  As Judge Young explained in <u>Chaarbouni,</u> *id.* at 102, when enacting the MCRA, the legislature was expanding civil rights to protect against harm by private actors (protection from the acts of public actors is found in 42 U.S.C., sec. 1983) and the statutory definition of "person" (M.G.L. c.4, § 7) includes corporations, but excludes the state and its agencies and political subdivisions. Therefore, it makes sense to include private corporations -- but not governmental entities -- under the term "persons" found in the MCRA.

The MBTA is a public entity and a political subdivision of the state. Therefore, it is not a "person" within the meaning of the MCRA and Count III must be dismissed.

IV.   COUNT IV, ALLEGING COMMON-LAW WRONGFUL TERMINATION,
      MUST BE DISMISSED BECAUSE OF THE EXCLUSIVITY PROVISIONS
      OF M.G.L. c.151B.

When a statute already exists to protect a public policy, a plaintiff may not recover for wrongful termination in violation of that public policy. In <u>Melley v. Gillette Corp.</u>, 19 Mass. App. Ct. 511 (1985), *aff'd,* 397 Mass. 1004 (1986), the plaintiff sued his former employer for age discrimination. In its decision, the Massachusetts Appeals Court stated:

> [t]he difficulty with Melley's argument is that a finding that certain conduct contravenes public policy does not, in itself, warrant the creation of a new common law remedy for wrongful dismissal by an employer.... [W]here ... there is a comprehensive remedial statute, the creation of a new common law action based on the public policy expressed in that statute would interfere with that remedial scheme.
> *Id.* at 513.

In the present case, the Plaintiff alleges that he suffered from a "horrible work environment" due to "harassment" and later "retaliation" by his supervisors (Complaint, par.26). By so alleging, he merely recast his claims of age discrimination in violation of M.G.L. c.151B (Count I). It is beyond argument that M.G.L. c.151B provides a broad statutory scheme for preventing employment discrimination, including retaliation. The Plaintiff's claim of wrongful termination is therefore barred by M.G.L c.151B. *See also,* <u>Romaine v. Quabaug Corp.</u>, 2004 WL 3090175 (Mass. Super.)(attached as "1").

Likewise, the Plaintiff's claims for injuries suffered by his termination (Complaint, par. 27) are barred by the exclusivity provisions of the Massachusetts Workers Compensation Act (hereinafter "WCA"), M.G.L. c.152, § 1(7A). *See, id.* at 1. The Massachusetts Supreme Judicial Court has stated that in cases where the WCA and M.G.L. c.151B both apply, claims of negligent and intentional infliction of emotional distress are barred by the WCA. <u>Green v. Wyman-Gordon Co.</u>, 422 Mass. 551, 558 (1996). Notably, the plaintiff in <u>Romaine</u> argued that the WCA did not apply to his case because his injuries stemmed from his termination. However, as Judge Agnes explained, "Romaine is incorrect; because his injuries arise from his termination, his injuries are deemed to arise out of his employment, and the WCA therefore applies to his case." <u>Romaine</u> (attached as "1") (footnote and citations therein omitted).

Accordingly , Count IV must be dismissed.

V.    COUNTS V AND VI, ALLEGING MCRA VIOLATONS AGAINST
      MS. MOULTON AND MS. YATES, RESPECTIVELY, MUST BE DISMISSED.

*MS. MOULTON AND MS. YATES ARE EACH ENTITLED*
*TO A GRANT OF QUALIFIED IMMUNITY*

Ms. Moulton and Ms. Yates are each entitled to a grant of qualified immunity dismissing them, respectively, from Counts V and VI. The Plaintiff alleges, so very vaguely, that Ms. Moulton and Ms. Yates interfered with his rights to freedom of association, freedom of speech, the right to contract, and to be free of taint to his good name in violation of the Massachusetts Civil Rights Act, M.G.L. c.12, § 11 I (Complaint, pars. 29 and 32). The only interaction Ms. Moulton had with the Plaintiff was to, occasionally, meet with him and Ms. Yates at meetings to offer direction and advice. Ms. Yates interviewed the Plaintiff and, after a competitive hiring process, she recommended that he be hired. Thereafter, she was his direct supervisor and met with the Plaintiff regularly. The Plaintiff alleges that, by discussing his job performance and setting goals and objectives at these meetings, Ms. Moulton and Ms. Yates used threats, intimidation, and coercion to interfere with his rights.

The Plaintiff's allegations are specious. Ms. Moulton and Ms. Yates, as state actors, are each entitled to a grant of qualified immunity dismissing them from Counts V and VI, respectively. The qualified immunity available under 42 USCA § 1983, so familiar to federal courts, also applies with equal force to claims brought under the Massachusetts Civil Rights Act, M.G.L. c.12, § 11 I. *See,* Duarte v. Healy, 405 Mass. 43, 47 (1989) (holding that federal qualified immunity principles apply to alleged violations of the Massachusetts Civil Rights Act).

"Qualified immunity protects public officials from section 1983 civil liability so long as they 'acted reasonably under settled law in the circumstances'." Hunter v. Bryant, 502 U.S. 224, 228, 112 S.Ct. 534 (1991) (per curiam). The doctrine protects public officials and ensures that, before they are subjected to suit, they are on notice that their conduct is unlawful. Saucier v. Katz, 533 U.S. 194, 206, 121 S.Ct. 2151, 2158 (2001).

The Supreme Court has set out a two-part test for determining whether an official is entitled to qualified immunity. *See, id.,* 533 U.S. at 200-09. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If so, the second step requires examining "whether the right was clearly established." *Id.*

So, a government employee is immune section 1983 damages where a reasonable official could believe (the test is objective), even if mistakenly, that her conduct did not violate the First Amendment. Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727 (1982). Immunity exists even where the abstract "right" invoked by the plaintiff

is well-established, so long as the official could reasonably have believed "on the facts" that no violation existed. *See*, Suboh v. Dist. Attorney's Office, 298 F.3d 81, 90 (1st Cir. 2002)

In the present action, the record before this Honorable Court simply does not present a case in which either Ms. Moulton or Ms. Yates "*must* have known" that she was acting unconstitutionally. The facts of record in this case, even when viewed in the light most favorable to the Plaintiff, make it clear that reasonable officials in their position at the time *could* objectively have believed (even if mistakenly) that their conduct did not violate the First Amendment. Therefore, each is entitled to a grant of qualified immunity dismissing her from Counts V and VI of the Complaint.

## *MS. MOULTON AND MS. YATES ARE EACH ENTITLED TO SUMMARY JUDGMENT ON THE MERITS FOR COUNTS V AND VI, RESPECTIVELY.*

To establish a claim under the MCRA, one "'must prove that (1) his exercise or enjoyment of rights secured by the Constitution or the laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion. '' ... by the Civil Rights Act, 'the Legislature did not intend to create 'a vast constitutional [and statutory] tort '' ... and ...the insertion by the Legislature of the requirement of threats, intimidation or coercion was specifically intended to limit liability under the Act." Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 564-66 [citations omitted], *cert. denied*, 516 U.S. 931, 116 S.Ct. 337 (1995). The Massachusetts Supreme Judicial Court has defined the words "threats, intimidation, or coercion" as follows:

> "Threat" in this context involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. "Intimidation" involves putting in fear for the purpose of compelling or deterring conduct.... ["Coercion" means] "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Carvalho v. Town of Westport, 140 F. Supp.2d 95, 100 (D. Mass. 2001)

The Legislature intended that even a direct deprivation of a plaintiff's secured rights would not be actionable under the act unless it were accomplished by means of one of these three constraining elements. Therefore, a direct deprivation of rights, even if unlawful, is not coercive because it is not an attempt to force someone to do something that that person would not otherwise have done. Critical to make coercion actionable is that there is an application to another of such force, either physical or moral, as to constrain him to do against his will something he would not

11

otherwise have done. In certain circumstances, economic coercion, standing alone, may be actionable under the act. <u>Buster v. Moore</u>, 38 Mass. 635, 648 (2003).

However, it has been held that where a plaintiff's own conduct provided independent grounds for the defendant to discharge him, or when an employer fires an at-will employee who has become ineffective, thereby causing the plaintiff an economic loss, there is no action under the MCRA. *Id.* at 648-49. In the present case, neither Ms. Moulton, nor Ms. Yates did anything that can be considered "threats, intimidation or coercion" as these terms are understood in Massachusetts law. The only adverse action toward the Plaintiff was his discharge for deliberate misrepresentations of his experience, managerial gaffes and his overall ineffectiveness. At the time of his discharge, he was an at-will employee during his probationary period. As Chief Justice Marshall of the Massachusetts Supreme Judicial Court explained in <u>Buster</u>, such action by an employer is not actionable under the MCRA.

VI.    COUNTS VII AND VIII, ALLEGING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST MS. MOULTON AND MS. YATES, RESPECTIVELY, MUST BE DISMISSED.

The Massachusetts Supreme Judicial Court has stated that in cases where the WCA and M.G.L. c.151B both apply, claims of negligent and intentional infliction of emotional distress are barred by the WCA. <u>Green</u>, 422 Mass. at 558. This is so even when the Plaintiff claims his injuries resulted from his termination, not by workplace harassment. *See,* <u>Romaine</u> (attached as "1").

As explained in <u>Romaine</u>, the WCA precludes certain common law actions against employers if: (1) the plaintiff is an employee; (2) his or her injury is a personal injury within the meaning of the WCA; and (3) the injury arises out of and in the course of his or her employment. In the present case, (1) the Plaintiff was an employee; (2) the emotional injury alleged is a personal injury within the meaning of the WCA; and (3) the injury alleged arose out of his employment. Therefore, the exclusivity provisions of the WCA bar his common-law claims. *Id.* at 1.

CONCLUSION

In this case it is especially important to note that "[E]ven in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." <u>*Benoit.*</u>, 331 F.3d at 173 (internal quotations omitted).

For all the foregoing reasons, the Defendants, MBTA, Barbara Moulton, and Rose Yates, submit that all claims against them must be dismissed

Respectfully submitted,

for the Defendants,

By:

Kevin S. McDermott, BBO# 544513
Assistant General Counsel
MBTA Law Department
10 Park Plaza, Suite 7760
Boston, MA 02116
(617) 222-4756
KMcDermott@mbta.com

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 21 Jan 05

13