**Westlaw.**

Not Reported in N.E.2d  
2004 WL 3090175 (Mass.Super.)  
**(Cite as: 2004 WL 3090175 (Mass.Super.))**

Page 1

Only the Westlaw citation is currently available.

Superior Court of Massachusetts.

Erwin ROMAINE  
v.  
QUABAUG CORPORATION.

No. 04-1239A.

Dec. 17, 2004.

### MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS

PETER W. AGNES, JR., Justice.

#### INTRODUCTION

*1 This matter comes before the Court on Defendant Quabaug Corporation's motion pursuant to Mass.R.Civ.P. 12(b)(6). Quabaug moves to dismiss Counts II, III, and IV of Plaintiff Erwin Romaine's Complaint. These counts assert negligent and intentional infliction of emotional distress and wrongful termination in violation of public policy. After consideration and for the reasons set forth below, the motion to dismiss is *ALLOWED.*

#### BACKGROUND

This case arises out of Quabaug Corporation's ("Quabaug") termination of Erwin Romaine ("Romaine").

In December of 2002, Quabaug hired Romaine as a "production helper." On March 5, 2003, Romaine injured his left hand during the course of his employment at Quabaug. As a result of the injury, Romaine underwent surgery, occupational therapy, and several months of treatment. During this time, Romaine received worker's compensation benefits.

In August or September of 2003, the parties agreed that Romaine could return to work with reasonable accommodations. In addition, Romaine was notified that his worker's compensation benefits were being terminated because it had been determined that Romaine could return to work. Quabaug offered Romaine a modified-duty position. According to Romaine's complaint, Quabaug then would not allow Romaine to return to work with the necessary restrictions and accommodations, and it informed Romaine that he was terminated from his position.

Romaine then filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD"), charging Quabaug with disability discrimination. Romaine also claims that an OSHA complaint was filed as a result of his injury. Romaine removed the MCAD complaint and filed the present action in Superior Court.

#### DISCUSSION

**I. Counts II and III: Negligent and Intentional Infliction of Emotional Distress**

Romaine argues that the Workers' Compensation statute does not apply to his claims of negligent and intentional infliction of emotional distress because he is bringing the claims pursuant to a claim of handicap discrimination (under G.L. c. 151B, § 4) rather than bringing the claims pursuant to the Worker's Compensation Act (G.L. c. 152, § 24) ("WCA"). While it is true that common law claims of negligent and intentional infliction of emotional distress are not precluded by G.L. c. 151B, Romaine's argument is without merit because the Supreme Judicial Court has stated that in cases where the WCA and G.L. c. 151B both apply, claims of negligent and intentional infliction of emotional distress are barred by the WCA. *Green v. Wyman-Gordon Co.,* 422 Mass 551, 558 (1996).

Romaine argues that *Green* is distinguishable from the present case because *Green* involves a claim of sexual harassment that took place at work during the course of the plaintiff's employment, which means that the plaintiff's injuries were compensable under the WCA. Romaine asserts that his claims do not arise from injuries at **work** but rather they arise from the alleged **wrongful termination**, therefore making the WCA inapplicable. Romaine is incorrect; because his injuries arise from his termination, his injuries are deemed to arise out of his employment, [FN1] and the WCA therefore applies to his case.

FN1. See *Simmons v. Merchants Mut. Ins.*

Not Reported in N.E.2d
2004 WL 3090175 (Mass.Super.)
(Cite as: 2004 WL 3090175 (Mass.Super.))

Page 2

Co., 394 Mass. 1007 (1985) (allegation that discharge of 18-year employee was in bad faith and amounted to intentional or reckless infliction of emotional distress was barred by WCA); Niemi v. Genrad, 20 Mass.App.Ct. 948 (1985) (emotional distress, if any, inflicted by dismissal for excessive absenteeism following injury is work-related and thus barred by WCA).

*2 The WCA precludes certain common law actions against employers if: (1) the plaintiff is an employee; (2) his or her injury is a personal injury within the meaning of the WCA; and (3) the injury arises out of and in the course of his or her employment. Foley v. Polaroid Corp. (Foley I), 381 Mass. 545, 548-549 (1980). In this case, (1) Romaine was an employee; (2) the emotional injury alleged is a personal injury within the meaning of the WCA; [FN2] and (3) the injury alleged arose out of his employment. Romaine's common law claims should therefore be barred.

   FN2. See Foley I, 381 Mass. at 550.

### A. Negligent Infliction of Emotional Distress

Although a plain-reading of G.L. c. 152, § 1(7A) seems to allow claims of negligent infliction of emotional distress, Massachusetts courts bar plaintiffs' claims of negligent infliction of emotional distress in cases where the WCA applies. Section 1(7A) of G.L. c. 152 states in pertinent part: "[n]o mental or emotional disability arising principally out of a bona fide, personnel action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injury within the meaning of this chapter."

By taking a plain reading of the statute, it seems that "an action for negligent infliction of emotional distress that is *not* the result of a bona fide personnel action is barred by the exclusivity provision of the workers' compensation act." Green, 422 Mass. at 560. Claims of emotional distress not caused by a bona fide personnel action are precluded by the WCA's exclusivity provision because they are included in the WCA's definition of personal injury. The language of the statute also seems to indicate that emotional distress caused by a bona fide personnel action is not a personal injury as defined by the WCA. Because the WCA only bars claims arising out of its definition of personal injuries, it would seem that the WCA does *not* preclude claims for negligent infliction of emotional distress that are the result of bona fide personnel actions. [FN3]

   FN3. This analysis does not apply to intentional infliction of emotional distress because G.L. c. 152, § 1(7A) states that intentional infliction of emotional harm *is* deemed to be a personal injury within the meaning of the WCA.

This somewhat anomalous interpretation is the result of inartful drafting by the legislature. Massachusetts courts have rejected the plain-meaning of the statute:

   [I]t would strain credulity and common sense to presume that the Legislature chose to limit employers' collective liability under the workers' compensation scheme, only to expose individual employers to greater liability in common law negligence suits based on bona fide personnel actions.

Clarke v. Kentucky Fried Chicken of California, Inc., 57 F.3d 21, 29 (1st Cir.1995).

   It seems a paradox to eliminate nonintentional infliction of emotional harm arising out of a personnel action as a workers' compensation claim but to allow such a claim through another door as a common law action.

Mullen v. Ludlow Hosp. Soc'y, 32 Mass.App.Ct. 968, 970 (1992). [FN4]

   FN4. The text quoted above is dicta: the Appeals Court in *Mullen* did not go to the merits on the negligent infliction of emotional distress claim because the plaintiff failed to submit evidence of physical harm in the summary judgment record.

It is obvious that the Legislature wished to protect the employer from liability under the Act for claims arising out of bona fide personnel action unless motivated by an intent to inflict emotional distress. In those circumstances, it seems unlikely that the Legislature intended to preserve a civil action from claims based on negligent infliction of emotional distress that arise from a bona fide personnel action. To do so would negate not only the purpose of relieving employers from the financial burdens of such claims ..., but also negate the intended purpose of the Workers' Compensation Act to provide a uniform, statutory remedy for injured workers, in contrast to a piecemeal, tort-based system.... As a result, there is no reason to believe that the Legislature intended

Not Reported in N.E.2d  
2004 WL 3090175 (Mass.Super.)  
(Cite as: 2004 WL 3090175 (Mass.Super.))

Page 3

to open the door for civil actions based on claims for negligent infliction of emotional distress arising out of bona fide personnel actions.

*3 *Catalano v. First Essex Sav. Bank,* 37 Mass.App.Ct. 377, 380 (1994).

> The intent of the amendment was to reverse the result in *Kelly's Case,* 394 Mass. 684 (1985), where we permitted an employee to recover for emotional distress associated with a threatened layoff and transfer.... The Plaintiff purports to turn this intention on its head, presuming that the Legislature, in cutting off an avenue of recovery for employees under the workers' compensation act, intended to open up the previously closed common law route. We see no reason to attribute such paradoxical intentions to the Legislature....

*Green,* 422 Mass. at 559.

Despite the inartful drafting of G.L. c. 152, § 1(7A), Massachusetts courts have interpreted the WCA to bar common law claims of negligent infliction. Romaine's claim for negligent infliction of emotional distress must therefore be dismissed.

**B. Intentional Infliction of Emotional Distress**

The WCA bars common law claims of intentional infliction of emotional distress incidental to termination. "Claims for 'emotional distress resulting from employment termination, wrongful or otherwise, are precluded by [the] exclusivity provision [of the WCA]." *Lennon v. Walsh,* 798 F.Supp. 845, 848 (D.Mass.1992), quoting *Parisi v. Trustees of Hampshire Coll.,* 711 F.Supp. 57, 63 (D.Mass.1989). The Supreme Judicial Court has stated that "the exclusivity provision of the workers' compensation act also precludes an action against an employer for negligent and intentional infliction of emotional distress...." *Doe v. Purity Supreme, Inc.,* 422 Mass. 563, 566 (1996). Romaine's claim for intentional infliction of emotional distress is barred by the WCA, and dismissal is therefore appropriate.

**II. Wrongful Termination in Violation of Public Policy**

If a statute already exists to protect a public policy, a plaintiff may not recover for wrongful termination in violation of that public policy. In *Melley v. Gillette Corp.,* 19 Mass.App.Ct. 511 (1985), aff'd, 397 Mass. 1004 (1986), the plaintiff sued his former employer for age discrimination. In its decision, the Appeals Court stated:

> [t]he difficulty with Melley's argument is that a finding that certain conduct contravenes public policy does not, in itself, warrant the creation of a new common law remedy for wrongful dismissal by an employer.... [W]here ... there is a comprehensive remedial statute, the creation of a new common law action based on the public policy expressed in that statute would interfere with that remedial scheme.

*Melley,* 19 Mass.App.Ct. at 511-513.

Although in the present case, Romaine is suing for handicap discrimination rather than age discrimination, the reasoning is the same as that in *Melley.* Because G.L. c. 151B provides a broad statutory scheme for preventing employment discrimination, Romaine's claim of wrongful termination is therefore barred by G.L c. 151B.

Romaine argues that because violation of G.L. c. 151B and wrongful termination are different claims for which different proof is required, it is premature to dismiss the claim at this point. Other Superior Court cases, however, support *Melley's* interpretation of c. 151B's exclusivity provision. In *Mayo v. Dalbar, Inc.,* Civil No. 99-6276 (Middlesex Super. Ct. April 19, 2002) (Houston, J.), the plaintiff sued her former employer for sexual harassment. The plaintiff pursued several different claims against her former employer, including claims of wrongful termination in violation of public policy and violation of G.L. c. 151B. The Superior Court justice granted summary judgment to the defendant on the wrongful termination claim, stating "the public policy against sexual harassment and gender discrimination is codified in G.L. c. 151B, § 4 and provides a comprehensive legislative scheme establishing the same rights and remedies as a common law wrongful termination claim."

*4 Similarly, in *Schutz v. Go Ahead Vacations, Inc.,* Civil No. 974409 (Middlesex Super. Ct. Sept. 1, 1999) (Sosman, J.), the plaintiff asserted several claims against her former employer, including violation of G.L. c. 151B and wrongful termination in violation of public policy. The plaintiff had complained to the management of a possible violation of the Massachusetts Wages and Hours Act and was terminated the following day. The Superior Court justice granted the defendant's motion for summary judgment on the claim of wrongful termination because "the plaintiff's claim was that she was fired because of her complaint that the company was violating G.L.c. 151, § § 1A and 1B gives her a claim under G.L. c. 151, § 9(1), not a common law claim for termination in violation of public policy."

Not Reported in N.E.2d  
2004 WL 3090175 (Mass.Super.)  
**(Cite as: 2004 WL 3090175 (Mass.Super.))**

Page 4

In *Berghuis v. Univ. of Mass. Med. Ctr.*, Civil No. 950875B (Worcester Super. Ct. Apr. 6, 1998) (Fecteau, J.), the plaintiff claimed he was wrongfully terminated because of his disability (mental illness). The Superior Court justice granted the defendant's motion for summary judgment on the grounds that G.L. c. 151B's exclusivity provision barred the wrongful termination claim.

Because G.L. c. 151B provides a broad statutory scheme for preventing employment discrimination, Romaine's claim of wrongful termination is barred by G.L c. 151B, and case law supports dismissal at this time.

### *ORDER*

For the foregoing reasons, it is hereby ***ORDERED*** that Quabaug's Motion to Dismiss Counts II, III and IV is ***ALLOWED.***

2004 WL 3090175 (Mass.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.