# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVE BARYLICK )<br>Plaintiff )<br> )<br>v. )<br> )<br>MASSACHUSETTS BAY )<br>TRANSPORTATION AUTHORITY, )<br>BARBARA MOULTON, and )<br>ROSE YATES, )<br>Defendants ) | C.A.# 04-10618-RCL |

## THE AFFIDAVIT OF ROSE YATES

I, Rose Yates, do hereby swear and depose that:

1.) At all applicable times to the present action, I have been the Deputy Director of the MBTA's Marketing Communications Department. As such, I was the Plaintiff's immediate supervisor.

2.) The Plaintiff was hired on June 30, 2003, as the Manager of Creative Services. He was employed in this position until his termination on September 10, 2003.

3.) Pursuant to MBTA policies, as a new hire, the Plaintiff was an at-will employee on probationary status for (120) one hundred and twenty working days. Thereafter, he would be a non-probationary member of the MBTA's executive union and he would have the full panoply of protections afforded under the applicable collective bargaining contract.

4.) At all applicable times to the present action, the Defendant, Barbara Moulton, was the Director of the MBTA's Marketing Communications Department. As such, she was my immediate supervisor.

5) The Plaintiff was hired after submitting an application and a resume in response to a job posting for the position. A three-person panel interviewed him. This panel consisted of representatives from the Office of Human Resources and the Office of Diversity, and me.

5.) Applicants presented sample portfolios of their work and each was asked an identical set of eleven questions from an interview guide. They were asked to perform a ten-minute exercise in generating a strategic brief and to give an oral report. Each applicant received scores based on their oral responses to the questions. Some questions asked about their prior experience. Applicants are expected to be truthful. Based on his responses, I scored the Plaintiff higher than other applicants. At the end of the selection process the other two panel members and I compared our scores and agreed that the Plaintiff was the highest scoring candidate. As a result, the panel members recommended the Plaintiff for hire.

6.) Prior to the Plaintiff's hire, I had performed the job duties of the Manager of Creative Services. Since his termination, I have performed the job duties of the Manager of Creative Services.

7.) Over the course of his initial several weeks at the MBTA, the Plaintiff was not performing as expected. In an effort to enable him to focus on management issues, I assumed two (2) of the three (3) main areas of his responsibility--- physical plant renovations and staffing. In turn he was expected to concentrate on managing the creative services projects.

8.) The Plaintiff attended all managers meetings. I met with him frequently to set goals, offer advice, and to share my experiences when dealing with the job duties of the position. Contrary to his assertions, the Plaintiff was never excluded from any meetings or isolated in any fashion. He described my advice as "mostly valid" and "helpful".

9.) However, despite my coaching on how to handle management issues, the Plaintiff did not perform at an acceptable level. Moreover, he continuously displayed an inappropriate and erratic management and communication style.

10.) Examples of his unprofessional management style are numerous, but the following two incidents demonstrate the Plaintiff's lack of management skills:

   a) One incident occurred on approximately August 11, 2003, when he called a staff meeting and deliberately excluded Dianne Daye, the only African-American woman of his six (6) person staff. She told me that she felt excluded. When I questioned him about this, he stated that he did this on purpose to "send a message to her". Ms. Moulton and I explained to him that deliberately isolating and excluding staff members is never a good management strategy and is never acceptable

at the MBTA. Moreover, we told him that, in this instance, he might give the appearance of violating the diversity ideals and zero tolerance policy of the MBTA.

b) Another example of the Plaintiff's lack of management skills occurred on September 4, 2003 when he sent a terse e-mail to Dianne Daye, the very same African-American woman staff member he excluded from the staff meeting. He blamed her for his lack of information concerning a major project. Again, Ms. Moulton and I had to instruct him on basic concepts of comportment and communication. (The e-mail of Plaintiff and of the responses by Barbara Moulton and me are attached as "A").

11.) To assist with explaining the Plaintiff's job performance issues, I have attached true and accurate copies of selected memoranda and e-mails that I sent to the Plaintiff. In chronological order these are:

"B" is an e-mail (dated, 7-14-2003) to memorialize a meeting that prioritized work items;

"C" is an e-mail (dated 8-7-2003) memorializing a meeting where he admitted to having communication problems within the Department;

"D" is his reply e-mail wherein he admits that the miscommunication problem lies mostly with him not asking enough of Barbara Moulton, me, and others;

"E" is a memorandum (dated 8-18-2003) addressing his managerial gaffe regarding Dianne Daye and other problems he had on the job;

"F" is a memorandum (dated 9-4-2003) memorializing a meeting on August 26, 2003, wherein he was informed that he did not meet expectations in regard to his communication, management skills, and commitment. He was reminded of his own statement that he "might not be the man for the job". Notably, I stated in the memo that, on August 26, 2003, we agreed to seriously focus on these issues for the next two weeks and then talk about his future at the MBTA.

12.) After the September 4, 2004 memorandum described in "F" was provided to the Plaintiff, and after meeting with him, he sent the terse e-mail to Dianne Daye that is described in paragraph 10(b).

13.) Over the course of the ten weeks that the Plaintiff worked as the Manager of Creative Services, it became clear to me that he lacked a basic understanding of his job responsibilities and that he did not understand the work within the unit. At a meeting on September 5, 2003, attended by the Plaintiff, Barbara Moulton and me, he admitted that he had never executed a creative brief. Use of a creative brief is a

3

critical and core area of his job. It is a vital tool in creative strategy and is used throughout the marketing industry. During the initial interview, and until that meeting, he had repeatedly misrepresented his experience with creative briefs and strategy.

14.) After the meeting on September 5, 2003, I consulted with the MBTA's Office of Human Resources and Office of Labor Relations about the concerns with the Plaintiff's work performance and about what was in the best interest of the MBTA.

15.) The Plaintiff's probationary employment at the MBTA was terminated because the Plaintiff's work did not meet the MBTA's legitimate expectations. At the September 10, 2003 meeting with him and his attorney/union representative, he was given a written notice of the reasons that he was being terminated (attached as "G"). He denied the reasons, but did not rebut them. He was offered the opportunity to resign, but he declined. Accordingly, he was terminated, effective September 10, 2003.

16.) No one else was hired for the position largely because of budgetary constraints faced by this office, and the MBTA generally.

17.) The MBTA's Office of Diversity and Civil Rights reviewed the ages of managers in this office from January 1, 2002 to the present. The results are that the Defendants, Barbara Moulton and me, are over 40 years of age.
On January 1, 2002, there were five other managers. Their years of birth are: 1945; 1950; 1951; 1957; and 1969.
On January 1, 2003, there were five other managers. Their years of birth are: 1945; 1951; 1957; 1969; and 1970.
On January 1, 2004, there were only three other managers. Their years of birth are: 1945; 1951; and 1957.
On January 1, 2005, there were only three other managers. Their dates of birth are: 1945; 1950; and 1951.

Signed under the pains and penalties of perjury.

_____   1/21/05
Rose Yates                date

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party [illegible] 21 JAN 05

4